## PERLEY HUNT *vs.* WILLIAM WHITNEY.

Referees, to whom a complaint for flowing land by a mill dam was submitted under a rule of court, assessed all past damages done to the complainant by such flowing, up to the time when they returned their award into court, and also assessed future yearly damages, and a sum in gross for all damages thereafter to be sustained: The award was immediately accepted, and judgment rendered thereon; and the complainant seasonably elected to take said sum in gross: The respondent, as soon as the award was published, filed a notice, and gave a copy thereof to the complainant, that he waived all right to flow said land, and that he should not thereafter flow the same, but should draw down the water raised by his mill dam; and he immediately drew down the water accordingly: He also paid to the complainant all past damages, as assessed by the referees, and the costs of the proceedings on the complaint, pursuant to the judgment on the award. *Held,* in an action by the complainant to recover the gross damages, that the respondent was not bound to pay them.

IN an action of debt, the plaintiff sought to recover $312·75, the amount awarded to him by referees, as gross damages for the flowing of his lands by means of the defendant's mill dam. The parties submitted the case to the court on the following facts agreed:

The defendant became the owner of a mill and dam, as mortgagee thereof, and took possession on the 3d of April 1839. The mortgagor had previously flowed the plaintiff's lands, and the defendant afterwards continued to flow them. At the December term, 1839, of the court of common pleas, the plaintiff entered a complaint against the defendant, under the Rev. Sts. c. 116, praying that a jury might be empanelled to estimate the damages caused by the flowing of his lands by the defendant's said mill dam. The parties afterwards submitted the matter of

said complaint to referees, under a rule of court and an agreement that their award should have the effect of a verdict of a jury. The referees returned their award at the June term, 1841, and the same was then accepted by the court and judgment rendered thereon. The award was, that said Hunt recover of said Whitney a certain sum, for damages done to said lands by the flowing since the 3d of April 1839, to the time of the award returned, and a certain yearly sum thereafter; and "that the gross sum of $ 312·75 would be a just and reasonable compensation for all the damages to be hereafter occasioned," &c. At the same term, immediately after the award was published, the defendant filed a notice in court, and gave a copy thereof to the plaintiff, as follows : "From and after the time of the rendition of judgment in said complaint, (unless compelled to pay the damages thereby assessed,) said Whitney shall waive all right or benefit under the award of the referees in said case and the judgment thereon, in relation to the flowing of the complainant's land by any dam of the said Whitney; that he shall not thereafter flow, or cause the same to be flowed, and shall and will draw down the water of the pond raised by his said dam to a point to which he has a right to raise or keep the same without any right or claim of damages for such flowing on the land of said Hunt; and shall not hereafter raise the said water so as to flow the complainant's land beyond what he has a right, if any, to do, independent of the provisions of the 116th chapter of the revised statutes." The defendant, immediately after the award of said referees was published, drew down the water of his pond, and has not since flowed the plaintiff's land.

The plaintiff, within three months after the aforesaid award was accepted, elected to take the sum in gross thereby awarded, instead of receiving the annual compensation therefor. And the defendant paid to the plaintiff the amount of the damages awarded by said referees, up to the time of the award, and the costs of the proceedings under the aforesaid complaint.

*C. Allen,* for the plaintiff.

*Washburn,* for the defendant.

DEWEY, J. It is contended by the plaintiff, that the pro-

ceedings under the submission, award, and judgment thereon, fix upon the defendant an absolute obligation to pay the sum awarded as gross damages for the right and privilege of maintaining and using his dam forever thereafter, and that this is so far a vested right in the plaintiff, that it cannot be defeated by any abandonment of the mill, or surrender of all future use of the dam, however promptly and unequivocally made by the mill owner. The question here raised is obviously of great practical importance ; and it has therefore received the deliberate consideration of the court.

It has been the policy of this Commonwealth, from an early period, to encourage the use of mill privileges ; and this object has been deemed so important by the legislature, that it has authorized the flowing of the lands of another, against his will, if convenient and necessary for the enjoyment of a mill. In connexion with this right thus to flow the lands of another, provision was also made for compensating for the damages that might be sustained by the owner of the land flowed. The earliest statutes required the payment to him, by the mill owner, of an annual allowance equal to the damages thus sustained. Anc. Chart. 405. *St.* 1795, *c.* 74, § 2. At a later period, *St.* 1829, *c.* 122, § 2, the land owner was permitted to have not only his annual damages assessed, and entitled from time to time to recover the same, but he acquired the further right to have gross damages also assessed, for a perpetual servitude, or permanent flowing of his lands, with the right of election to take either the yearly, or the gross damages. The Rev. Sts. *c.* 116, § 19, have substantially reënacted the same provisions.

The provision authorizing the assessment of gross damages, and requiring the mill owner to pay for a perpetual easement, conflicts, to some extent, with the principles that had before regulated the rights and obligations of the respective parties. Under the former system, the damages were in all cases limited to yearly assessments, and the right consequently remained in the mill owner to discontinue the use of his dam, and the flowing occasioned thereby, at any period when it was for his interest so to do. The two modes of assessing damages, now authorized

51*

by law, are upon essentially different principles. The annual allowance is " for the damages that shall be thereafter occasioned by the dam, so long as it shall be used." The gross damages are to be " a just and reasonable compensation for all the damages to be thereafter occasioned by such use of the dam; and for the right of maintaining and using the same forever." Rev. Sts. c. 116, § 19.

I: is quite obvious, that under the present statute provisions, the owner of the land flowed may compel the mill owner to the purchase of a perpetual easement in his land, or cause him to abandon the use of the dam and the right of flowing. To this extent the statute seems very plain. But the further inquiry is, whether the land owner can compel the purchase of the easement, at the amount awarded as gross damages, when the mill owner is disposed to abandon his privilege and surrender forever his right to flow the land.

This subject was somewhat considered in the case of *Fowler* v. *Holbrook*, 17 Pick. 191, and it was there suggested, in the opinion of the court, that there might be a right of election, on the part of the owner of the dam, to waive his right to flow the land of another, and that by so doing he might exonerate himself from the payment of gross damages. It was said, however, that if he had such right, it was requisite that he should remove the obstruction and so restore the land to the other party as it was before it was overflowed ; and that he should give reasonable notice of his election to abate the obstruction rather than pay the estimated damages. This he had not done, in the case then before the court ; on the contrary, he had kept up a head of water to the extent and in the manner authorized by the verdict of the jury that assessed the gross damages. But the present case comes before us under entirely dissimilar circumstances. Here the mill owner, immediately upon the publication of the award assessing the gross damages, being dissatisfied therewith, drew down the water of his pond, and has not since overflowed the land of the plaintiff; and he also immediately gave notice of his abandonment of all claim of right to flow the land.

In giving a construction to the statute, we look at the pur-

poses of the legislature, and endeavor, as far as practicable and consistent with the language of the statute, to give it full effect, to secure the object proposed by it. This right in the mill owner to overflow the lands of another, without his consent, had been sometimes thought to be harsh and even unjust in principle, and especially when applied to mills connected with large manufacturing establishments ; and with a view of giving further relief in such cases, such provision was made as would require, in all cases, at the election of the land owner, a purchase of the perpetual easement, if the mill owner would compulsorily exercise the right of flowing.

This object is fully accomplished, without adopting the construction of the statute contended for by the plaintiff. The right of the land owner may be fully secured by requiring the owner of the dam either to purchase a perpetual easement, or to cease to overflow the land. The object of these various provisions of the statute can be none other than to make full and complete remuneration to the owner of the land overflowed, for all damages he thereby sustains. By giving him full compensation for all past damages up to the period of the actual abandonment of the easement, and restoring to him the land free from any incumbrance, it would seem that exact justice is done to the owner of the land overflowed, and that he no more ought to have the power of forcing the sale of the perpetual use of the land to the mill owner, at an exorbitant price, or an over valuation, than the mill owner ought to have the power of acquiring the same at an unreasonably low price, if the jury should have under-estimated the value of such permanent right to flow the land. And this, as it seems to us, is the reasonable and proper construction to be given to the statute.

Even under this construction, the land owner will ordinarily have much the advantage over the owner of the dam, in the entire freedom of choice whether to accept the gross damages or not ; because he may decline to receive them, without any sacrifice, and resort to his other mode of compensation for the annual damages ; whereas the owner of the dam can only exercise his right of election to avoid the payment of gross dam-

ages, by abandoning his right to flow, and relinquishing the use of his dam ; a condition which may be very onerous.

We were at first somewhat strongly impressed with the objection, that it was too late for the owner of the dam to abandon his privilege, and his right to flow, for the purpose of exonerating himself from payment of the gross damages, after the return of a verdict, or the publication of an award fixing the amount of such damages ; and that the party was not to lie by and take his chance for a favorable verdict, accepting it if it be satisfactory to him, and repudiating it, if favorable to the other party.

If such opportunity would be thereby in fact afforded to the mill owner to retain or repudiate the privilege of flowing, upon paying the amount of the gross damages assessed, it would present a strong argument against the right of abandonment, claimed by the defendant. But this option of taking a perpetual servitude, or acquiring a permanent right to flow, upon paying the sum assessed as gross damages, is not given to the mill owner The land owner is not bound to accept the gross damages ; he is free to assent to it, or not, as it may be favorable, or otherwise, to his pecuniary interest. He may wholly reject it, and elect to take his annual damages, with the right of applying for an increase of the amount at a future period.

The view we have taken of the construction to be given to the statute is, therefore, not liable to the supposed objection, and will, we apprehend, be found to do substantial justice to all parties.

In the present case, it appearing that the abandonment of the dam was made seasonably and effectually, and that the defendant ceased to overflow the lands of the plaintiff, and also that all damages accruing to the plaintiff, up to the time of such abandonment and renunciation of the privilege, have been paid ; the court are of opinion that the plaintiff has no further claim upon the defendant, and is not entitled to recover the amount assessed for gross damages.

*Judgment for the defendant.*